Judgment rendered March 1, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,358-KW

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                                    Respondent

versus

TROY HOPKINS                                          Applicant

* * * * *

On Application for Writs from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 190,230

Honorable Donald Edgar Hathaway, Jr., Judge

* * * * *

PROMISE OF JUSTICE INITIATIVE                Counsel for Applicant
By:  Claude-Michael Comeau
     Jamila Asha Johnson
     Tina Peng
     Hardell Harachio Ward

ALSTON & BIRD, LLP
By:  Daniel Dubin, *Pro Hac Vice*

JAMES E. STEWART, SR.                        Counsel for Respondent
District Attorney

SUZANNE MORELOCK ELLIS
TOMMY JAN JOHNSON
JASON WAYNE WALTMAN
Assistant District Attorneys

* * * * *

Before STONE, STEPHENS, and ROBINSON, JJ.

**STONE, J**.

This criminal writ application comes from the First Judicial District Court, the Honorable Judge Donald E. Hathaway, presiding. In 1999, a non-unanimous jury convicted Troy Hopkins ("the defendant") of manslaughter, in violation of La. R.S. 14:31. On March 19, 2021, the defendant filed an application for post-conviction relief, seeking retroactive application of *Ramos v. Louisiana*, 590 U.S._____, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020), because of his non-unanimous conviction. The trial court denied the defendant's application on July 6, 2021, based on the United States Supreme Court's decision in *Edwards v. Vannoy,* 141 S. Ct. 1547, 209 L. Ed. 2d 651 (2021) which held that that *Ramos v. Louisiana, supra*, does not apply retroactively on federal collateral review as it does not meet the watershed rule set forth in *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1988). The trial court also determined that the defendant's application was untimely. The defendant sought supervisory review, and we granted the writ to docket for resolution. For the reasons expressed below, we recall the writ as improvidently granted and deny the writ application.

## FACTS AND PROCEDURAL HISTORY

The background in this matter was set forth in detail in this Court's earlier opinion in *State v. Hopkins*, 52,660 (La. App. 2 Cir. 4/10/19), 268 So. 3d 1226,1227, *writ denied*, 19-00841 (La. 9/24/19), 278 So. 3d 978 ("Hopkins II"):

> On August 31, 1997, at approximately 3:00 p.m., the defendant shot and killed the victim, Roderick Adger ("Mr. Adger"), while on the way to make a drug exchange. Mr. Adger's friend, Amy White ("Ms. White"), was present during the shooting.
>
> Mr. Adger, who lived with his girlfriend in a house on Lyon Street, contacted Ms. White, who lived in Mr. Adger's home on

Malcolm Street, about a half block away. Mr. Adger, disturbing Ms. White's sleep, informed her that the defendant would be arriving at the house on Malcolm Street, at which time Ms. White was to go to Mr. Adger's residence on Lyon Street and inform him of the defendant's arrival. Ms. White informed Mr. Adger of the defendant's arrival at the Lyon Street address, at which time Mr. Adger armed himself with his .38 caliber pistol hidden under his shirt and sagged pants.

Himon Jones, Jr. ("Mr. Jones"), Mr. Adger's first cousin, had just arrived at Mr. Adger's Lyon Street address to deliver a vehicle belonging to Mr. Adger's girlfriend on which he had been making repairs. Mr. Adger, accompanied by Ms. White and Mr. Jones, drove the vehicle to the Malcolm Street address to meet the defendant. While at her home, Ms. White secured her nine-millimeter pistol in a brown paper bag to carry with her on the drug transaction. Mr. Adger, Ms. White, Mr. Jones, and the defendant then left the Malcolm Street address together in the vehicle. Seated in the four-door vehicle were Mr. Adger in the driver's seat, the defendant in the front passenger seat, and Mr. Jones and Ms. White in the backseat.

Mr. Jones testified that, after having traveled only a short distance, he noticed that the defendant was pointing a pistol at him. Mr. Jones then jumped from the moving vehicle. Startled by Mr. Jones' immediate departure from the vehicle, Ms. White looked up to discover that the defendant was pointing a pistol at the side of Mr. Adger's head. The defendant demanded whatever drugs and money Mr. Adger possessed, which Mr. Adger turned over. As the remaining trio drove down Wallace Street toward Midway Street, only a few blocks from the initial point of departure, the defendant climbed between the bucket seats of the car to the back seat, keeping his pistol pointed at Mr. Adger. Ms. White requested that she and Mr. Adger be released since the defendant had what he wanted.

Once the vehicle was stopped at the intersection of Wallace Street and Midway Street, the defendant agreed to release Ms. White; however, Ms. White did not want to leave the vehicle without Mr. Adger. Ms. White exited the vehicle and waited near the trunk of the vehicle on the passenger side, disregarding the defendant's request that she walk away. The defendant told Ms. White to open the door on the front passenger side for Mr. Adger and to then move back. Mr. Adger, who was wearing a seat belt, was told to slide out of the unfastened seat belt. Mr. Adger managed to slide across to the passenger side and exit the vehicle. Suddenly, before Mr. Adger could completely turn toward the vehicle or utter Ms. White's name, Ms. White stated that she witnessed the defendant fire his gun at Mr. Adger, wounding him in the right side of his chest. Mr. Adger then returned fire in the direction of the defendant.

2

Ms. White testified that she did not see Mr. Adger with his gun out at the time the defendant first fired. She further stated that Mr. Adger, after being wounded, said, "Amy, serve him." This meant that Mr. Adger wanted Ms. White to retaliate. Ms. White fired all of her ammunition in the direction of the defendant and then fled the scene, running approximately four blocks to her house on Malcolm Street. After returning fire, the defendant drove off in the vehicle with the stolen drugs. The vehicle was later found totally destroyed by fire. Ms. White returned to the scene several minutes later and found Mr. Adger a few houses away from the scene of the shooting on Michel Street, fatally wounded; Mr. Adger later died at the hospital from the gunshot wound to the right side of his chest. The bullet entered the right side of Mr. Adger's chest and traveled in a descending lateral direction damaging his right lung, diaphragm, stomach, and liver.

Soon after the shoot-out, officers arrived to process the crime scene. Ms. White was questioned briefly but left the crime scene to check on Mr. Adger at the hospital. The following day, Ms. White was shown a photographic lineup and immediately identified the defendant as the person who shot Mr. Adger. Mr. Jones was shown the same photographic lineup on September 3, 1997, and also immediately identified the defendant as the person who shot Mr. Adger. The defendant was arrested later that night and was eventually indicted by a grand jury for first degree murder. The indictment was later amended, however; and the defendant was indicted for second degree murder. *State v. Hopkins, supra.*

\*\*\*

The defendant was ultimately sentenced to 65 years at hard labor. On March 19, 2021, the defendant filed an application for post-conviction relief, seeking retroactive application of *Ramos, supra*, because he was convicted by a non-unanimous jury. The trial court denied that application. On September 21, 2021, the defendant sought supervisory review, and we granted the writ to docket for resolution. The defendant urges: (1) that the trial court erred by denying the defendant's supplemental application for post-conviction relief pursuant to *Edwards v. Vannoy*, *supra*; and (2) the trial court erred by holding that *Ramos v. Louisiana, supra*, does not apply retroactively.

3

**DISCUSSION**

**Ramos retroactively**

The defendant asserts two assignments of error, but we address them as one since they urge the same grounds and conclusion. The defendant argues that despite the holding in *Edwards v. Vannoy*, *supra*, *Ramos, supra*, should be retroactively applied to his case. The defendant points out that in *Edwards v. Vannoy*, *supra*, the United States Supreme Court noted that states remain free to retroactively apply *Ramos v. Louisiana, supra*, to state post-conviction proceedings. He urges that *Teague v. Lane*, *supra*, requires retroactive application of *Ramos* because it announced a "watershed" exception and a new rule of criminal procedure. Additionally, the defendant further argues that *Ramos v. Louisiana, supra*, is retroactive under *Teague v. Lane*, *supra*, because *Ramos, supra*, requires a unanimous jury verdict, and that non-unanimous jury verdicts diminish the likelihood of accurate convictions.

Defendant asserts that a non-unanimous jury verdict creates structural error, which undermines the reliability of verdicts and increases the risk of wrongful convictions in Louisiana. Furthermore, he argues that the U.S. Supreme Court has long recognized that the Sixth Amendment requires unanimity, and the right to a jury trial is a fundamental right contained in the Bill of Rights. Additionally, he asserts that his conviction does not meet the precondition for recognizing a state's interest in finality because his trial was not fundamentally fair.

The State urges that the defendant's argument is barred by the recent Louisiana Supreme Court decision in *State v. Reddick*, 21-01893 (La. 10/21/22), 351 So. 3d 273. The State points out that the Louisiana

4

Supreme Court held that the jury-unanimity rule set forth in *Ramos v. Louisiana, supra*, does not apply retroactively in Louisiana collateral review proceedings, and that the defendant does not have any available grounds for relief based upon his non-unanimous jury verdict.

In *Ramos v. Louisiana, supra*, the United States Supreme Court held that the Sixth Amendment's right to a jury trial, as incorporated by the Fourteenth Amendment, requires a unanimous verdict to convict a defendant of a serious offense in both federal and state courts. *State v. Cohen*, 19-00949 (La. 1/27/21), 315 So. 3d 202. However, in *Edwards v. Vannoy, supra*, the United States Supreme Court, held that the *Ramos, supra*, jury-unanimity rule does not apply retroactively on federal collateral review. Furthermore, in *Edwards v. Vannoy, supra*, the United States Supreme Court indicated that states remain free to retroactively apply the jury-unanimity rule as a matter of state law in state post-conviction proceedings.

In *State v. Reddick, supra*, the defendant filed an application for post-conviction relief, seeking retroactive application of *Ramos, supra*, because he was convicted by a non-unanimous jury. The defendant was convicted of second-degree murder in 1993, and he was sentenced to life imprisonment without sentencing benefits. His conviction and sentence were affirmed on appeal. *State v. Reddick*, 97-1115 (La. App. 4 Cir. 2/11/98), 707 So. 2d 521, *writ denied*, 98-0664 (La. 9/18/98), 724 So. 2d 755, and the conviction was final in 1998. The Louisiana Supreme Court granted the writ application to determine whether the new rule announced by the Supreme Court in *Ramos, supra*, applies retroactively to cases on state collateral review. The court held that *Ramos, supra*, does not fall within *Teague*'s "watershed rule" exception that the Louisiana Supreme Court adopted in *State ex rel. Taylor v.*

5

*Whitley*, *supra*, and therefore the jury-unanimity rule set forth in *Ramos, supra*, does not apply retroactively in Louisiana.

*Reddick* is directly controlling in the matter before us. At the time of defendant's trial, the Louisiana Constitution required only ten out of 12 jurors to concur to render a verdict. Because of the *Reddick* decision, the defendant's claims are without merit.

## CONCLUSION

For the foregoing reasons, the writ is recalled as improvidently granted, and the writ application is denied.

**WRIT RECALLED; WRIT APPLICATION DENIED.**